UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-93-H

LONG JOHN SILVER'S, INC. and

                                        PLAINTIFFS

A&W RESTAURANTS, INC.,

V.

PATRICK NICKLESON, et al.                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This case involves a series of restaurant franchise agreements between Defendants-franchisees and Plaintiffs, Long John Silver's ("LJS") and A&W Restaurants, Inc. ("A&W"). The Complaint alleges breach of contract, trademark infringement, and unfair competition. Defendants have moved to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, transfer venue to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court will deny Defendants' motion to dismiss and its motion to transfer venue.

I.

Five distinct yet related franchise agreements between the parties are at issue: (1) the August 2009 franchise agreement between Patrick Nickleson Enterprises, LLC and A&W Restaurants, Inc. ("A&W") regarding the A&W restaurant located in Inver Grove Heights, Minnesota ("Inver Grove Agreement"); (2) A&W's 1988 license agreement with the Haglunds regarding the A&W restaurant located in Little Canada, Minnesota, which was assigned to Patrick Nickleson in 2000 ("Little Canada Agreement"); (3) A&W's 1995 license agreement with the Gathjes regarding the A&W restaurant located in Pine Island, Minnesota, which was

transferred to Patrick Nickleson in 2009 ("Pine Island Agreement"); (4) the 2003 LJS license agreement with JSH Inc. of Fairbault ("JSH") regarding the LJS restaurant in Coon Rapids, Minnesota, which was assigned to Patrick Nickleson Enterprises in 2008 ("Coon Rapids Agreement"); and (5) the 2008 license agreement between Patrick Nickleson Enterprises and A&W granting Defendants co-branding rights at the Coon Rapids LJS restaurant ("Master Agreement").[1]

The parties also executed three additional related agreements. Nickleson personally guaranteed the performance of all licensee duties and obligations required by both the Coon Rapids and Inver Grove Heights Agreements ("Guaranty Agreements"). In the third agreement, Nickleson executed a promissory note in favor of A&W in the amount of $4,740 to finance equipment for the Restaurants.

The License Agreements contain provisions regarding jurisdiction, forum selection, and choice of law. These provisions state that the franchisor "shall not in any way abrogate or reduce any rights of the Licensee . . . to submit matters to the jurisdiction of the courts of Minnesota." They additionally prohibit the franchisor from requiring litigation to be conducted outside Minnesota or abrogating franchisees' rights to any procedure, forum, or remedies provided for by Minnesota laws.

Between 2009 and 2010, A&W notified the Licensees for the Inver Grove Heights, Little Canada, and Pine Island restaurants that they were in default due to their failure to remit to A&W monthly sales reports, royalties, and advertising fees. A&W also believed the three

---

[1] Collectively, restaurant locations will be referred to as the "Restaurants," and the corresponding franchise and license agreements will be referred to as "License Agreements." Licensees and franchisees for all locations and under all agreements will collectively constitute "Licensees."

restaurants were operating with unapproved and unauthorized food products.  In January 2011, the defaults remained uncured, and A&W notified these Licensees that their License Agreements were terminated.

In 2010, both A&W and LJS notified the Coon Rapids restaurant that it was in default under both of its License Agreements for failure to submit required monthly sales reports, royalties, and advertising fees.  The Coon Rapids restaurant failed to cure its default and was later abandoned in violation of its License Agreements.  A&W and LJS soon thereafter terminated these License Agreements.

The License Agreements require that upon their termination licensees or franchisees: (1) immediately cease doing business as an LJS and/or A&W restaurant; (2) discontinue the use and display of restaurant marks and systems; (3) return confidential restaurant manuals; and (4) de-image restaurants from their present appearance.  Plaintiffs allege that in addition to failing to perform their licensee duties described above, Defendants violated these termination procedures.

As a result, on February 18, 2011, Plaintiffs filed this lawsuit in the Western District of Kentucky.  On March 28, 2011, Defendants filed suit in the District of Minnesota and also filed the motions pending here.  On August 31, 2011, the federal court in Minnesota stayed that action.

II.

The first issue the Court must address is whether and to what extent the Minnesota Franchise Act (the "Act") governs the Franchise Agreements in this case.  Defendants assert that as a matter of public policy, the Act governs all franchise agreements involving Minnesota franchisees and determines the District of Minnesota to be the proper forum in such cases.

Plaintiffs respond that the Defendants mischaracterize the Act, as it does not govern the parties' agreements since the Franchise Agreements do not contain provisions violating either Defendants' rights or the Act.  The Court will discuss each argument below.

A.

The Minnesota Franchise Act declares void

> *Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state,* or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state *to waive compliance or which has the effect of waiving compliance with any provision of sections* 80C.01 to 80C.22 or any rule or order thereunder is void.

M.S.A. § 80C.21.  The "choice of law" clause was added to the Act in 1989.  *Hockey Enters., Inc. v. Total Hockey Worldwide, LLC*, 762 F. Supp. 2d 1138, 1146 (D. Minn. 2011).  According to the Minnesota legislature, the addition was intended to clarify, not expand, the provision as it previously stood.  *S&G Janitschke, Inc. v. Cottman Transmission Sys.*, 2006 WL 1662892, at *4 (D. Minn. 2006).  The amendment communicated the legislature's intent to prohibit Minnesota franchisees from being bound by out-of-state choice-of-law or forum selection clauses that effectively denied franchisees' procedural and substantive due process rights, or their right to certain claims and remedies.  *Id.*

Since its amendment, the Act has been interpreted to invalidate any binding out-of-state choice-of-law provision imposed on a Minnesota resident-franchisee and any other provision purporting to diminish rights granted to Minnesota franchisees pursuant to the Act.  Essentially, the Act prohibits agreements that strip Minnesota franchisees of rights to which they are otherwise entitled, even where they are freely surrendered.  *See generally Id.*; *Hockey Enters.,*

*Inc.*, 762 F. Supp. 2d at 1146; *Blaske v. Burger King, Corp.*, 1991 WL 238998, at *3 (D. Minn. 1991). However, the Act does not circumvent traditional notions of jurisdiction, choice of law, and venue.² *See Home Owners Mgmt. Servs., Inc. v. ProHome Int'l, LLC*, 2004 WL 2697269, at *5 (D. Minn. 2004). In other words, the Act does not command that all franchise agreements with Minnesota franchisees unquestionably be filed and litigated in Minnesota and decided by Minnesota law.

B.

Presumably in an effort to comply with Minnesota law, the parties amended their License Agreements: (1) deleting provisions that required the Defendants to litigate in Kentucky and (2) acknowledging that the Minnesota Franchise Act, and its accompanying regulation, prohibit franchisors from *requiring* Minnesota-based franchisees to litigate outside Minnesota. As revised, the License Agreements prohibit Plaintiffs from "*requiring* litigation to be conducted outside Minnesota" or from abrogating or reducing the franchisees' rights to any procedure, forum, or remedies provided for by the laws of Minnesota.

Defendants argue that these amendments, consistent with the Act, obligate franchisors to pursue their litigation in Minnesota. As explained above, the Act does not operate to create new rights, but merely to protect the ones to which Defendants are already entitled. The Act prevents parties from stripping Minnesota franchisees from rights they would otherwise be free to exercise regarding choice of law, venue, and jurisdiction. The language in the parties License

---

² Although a Minnesota franchisee filed suit in the District Court of Minnesota, the Court considered the out-of-state Defendant's motion to transfer venue using the well-established test for § 1404(a) transfers, weighing convenience and the interests of justice, among other factors. The Court did not cite or otherwise reference the Minnesota Franchise Act in its venue-transfer analysis, reinforcing this Court's interpretation of the Act's implementation.

5

Agreements does not undermine the Act in any way; in fact, it reinforces the Act's policy of protecting Minnesota franchisees from overreaching provisions. However, the acknowledgment that franchisees cannot be *required* to litigate outside of Minnesota nor stripped of other procedural or substantive rights does not amount to a obligation to litigate all claims in Minnesota. Rather, the License Agreements' provisions appear to communicate, consistent with the Act, that franchisees cannot be forced to submit to a forum or choice of law that would, in the absence of any forum selection or choice of law provision, be improper. The Act does not protect franchisees from submitting to a forum, choice of law, or jurisdiction to which they are properly subjected.

As the License Agreements do not require that litigation occur outside of Minnesota (which would violate the Act), so too do they fail to designate the District of Minnesota as the appropriate venue. Rather, the License Agreements are silent on this issue, only stating that Defendants cannot be required to litigate outside of Minnesota. Here, it would hardly appear that this clause has been violated. Thus, Plaintiffs are entitled to pursue their claim where they wish, provided they do so in an appropriate venue.

C.

The Sixth Circuit, in determining whether a venue is proper, "asks 'whether the district the plaintiff chose had a substantial connection to the claim, and whether or not other forums had greater contacts.'" *Turpin v. Cal-Ark Trucking, Inc.*, 2007 WL 3306072, at *6 (W.D. Ky. Nov. 6, 2007) (citation omitted). "[I]n diversity of citizenship cases the plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *Id*. (internal

quotation marks and citation omitted).

This case involves parties of diverse citizenship litigating an amount in controversy exceeding $75,000.00, so the question becomes whether a substantial part of the events at issue arose in Kentucky. The License Agreements were negotiated and executed in Kentucky, and payments made thereunder were tendered in Kentucky. Because this case alleges breaches of these agreements, the Court finds that this forum has a substantial connection to the parties' claims.

Because venue is proper, Plaintiffs' filing and litigating of the claim here does not deprive Defendants of any rights they otherwise have. For these reasons, Defendants' motion to dismiss for improper venue is denied.

### III.

In the alternative, Defendants move to transfer venue to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a). In support of their request, Defendants note that the parties have been conducting business in Minnesota for several years, and the parties submitted to Minnesota jurisdiction through the forum selection clauses within their License Agreements.

### A.

"Courts within the Sixth Circuit have identified nine factors which should be considered when ruling upon a motion to transfer venue under section 1404(a)." *Cowden v. Parker & Associates, Inc.*, No. 5:09-CV-0323-KKC, 2010 WL 715850, at *3 (E.D. Ky. 2010). They are:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the

>forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (citing *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006)).

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir. 1951) (citations omitted). Accordingly, "[i]t is axiomatic that a motion under § 1404(a) cannot be used to transfer the inconvenience of litigating in a distant court from the defendant to the plaintiff." *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio 2005) (citation omitted). Thus, the burden rests with the moving party to "establish that transfer of venue is proper . . . and that the factors weigh strongly in favor of the request." *Adams v. Honda Motor Co.*, No. 3:05-CV-120-S, 2005 WL 3236780, at *2 (W.D. Ky. 2005). To do so, a defendant must "demonstrate that the 'forum to which it desires to transfer the litigation is more convenient *vis a vis* the plaintiffs initial choice.'" *Bunch v. W.R. Grace & Co.*, No. 04-218-DLB, 2005 WL 1705745, at *2 (E.D. Ky. 2005). The Court's analysis "begins with the premise that the plaintiff's choice of forum is to be respected. *Id*. (citation omitted).

B.

Here, Defendants request that venue be transferred to the District of Minnesota because (1) Minnesota is more convenient for both Defendants and their witnesses; (2) the vast discrepancy of means between the parties; (3) most of the events relating to disputes in this case occurred in Minnesota; (4) the Defendants have almost no meaningful contacts with Kentucky; (5) and Minnesota has stronger interests and greater familiarity in cases involving the Minnesota Franchise Act and Minnesota franchisees.

8

After consideration of Defendants' arguments, the Court concludes that although Minnesota is an adequate alternative forum, a transfer would simply shift some of the inconvenience of litigating from the Defendants to the Plaintiffs. Moreover, it is unclear from the pleadings thus far whether the physical evidence in Minnesota will be vital to either party's claims. The court also disagrees that Defendants have no meaningful contacts with Kentucky, as they negotiated and executed contracts in the state and have been engaged in business with a Kentucky business for more than two decades now. Considering these factors combined, Minnesota does not weigh out as the more convenient forum. As the Sixth Circuit has explained, it is not enough that Defendants identify an alternative adequate forum; rather, on balance, the proposal must outweigh Plaintiffs' choice of forum which is to be respected and rarely disturbed. Defendants have not met this burden and their argument therefore fails.

C.

Finally, Defendants have filed an action against Plaintiffs in the District of Minnesota and urge the Court to transfer or, at minimum, stay these proceedings, to avoid simultaneous parallel proceedings in separate courts. The Court's response is twofold: first, Defendants filed the action in the District of Minnesota after the instant lawsuit had begun, so they essentially created the "parallel" proceeding that they now point to as being problematic and grounds to stay this original action; second, the District of Minnesota has stayed its proceedings, leaving this Court, the first in which an action was filed, to freely proceed. For both of these reasons, Defendants' argument is unpersuasive.

The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss, or in the alternative,

transfer venue, is DENIED.

cc: Counsel of Record