UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-93-H

LONG JOHN SILVER'S INC. and
A&W RESTAURANTS. INC.                                    PLAINTIFFS

V.

PATRICK NICKLESON, et al.                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This case involves various claims made by Plaintiffs, Long John Silver's, Inc. and A&W Restaurants, Inc. ("A&W") against Patrick Nickleson[1] and three of his business entities[2] (collectively "Defendants") in connection with a series of failed restaurant franchises in Minnesota. Defendants have filed three counterclaims against A&W particular to the A&W franchise in Inver Grove Heights, Minnesota ("Inver Grove Franchise"), alleging violations of the Minnesota Franchise Act ("MFA") and common law fraud. They seek damages and/or recession of the Inver Grove franchise agreement (the "Franchise Agreement"). A&W has moved to dismiss all of Defendants' counterclaims.

---

[1] Patrick Nickleson filed bankruptcy in the District of Minnesota on May 4, 2012. The Minnesota Bankruptcy Court has since lifted the bankruptcy stay by an Order dated September 19, 2012. The Order specifically authorizes continuation of this litigation in this Court. Bankruptcy Order, Sept. 24, 2012, ECF No. 42-2.

[2] Nickleson is the sole owner, member, and officer of Patrick Nickleson, LLC, Patricia Nickleson Enterprises, LLC, and PBJ Enterprises, LLC ("Franchise Defendants"). The Franchise Defendants filed for bankruptcy in the District of Minnesota on November 6, 2012. Similar to the situation with Nickleson, the Minnesota Bankruptcy Court ordered that the automatic stay be lifted "so that the litigation may proceed in all respects" in the case *sub judice*. Bankruptcy Order, Dec. 7, 2012, ECF No. 65.

## I.

Plaintiffs have alleged breach of contract, trademark infringement, and unfair competition in connection with a series of restaurant franchise agreements between the parties. The original dispute involves four franchises: three A&W franchises and one Long John Silver's/A&W co-branded franchise.

In their Answer, Defendants allege three counterclaims, exclusively involving the Inver Grove Franchise and asserted only against A&W. The Inver Grove Franchise was the fourth, and last, A&W franchise Defendants operated.

Defendants have provided a detailed factual record of the events leading up to the opening of the Inver Grove Franchise, as evidenced by their forty-seven page Answer and counterclaim. Essentially, they allege the following: A&W courted Nickleson for over a year in hopes that Nickleson would open a fourth A&W franchise in Minnesota. Unlike the previous three franchises Defendants operated, the Inver Grove Franchise would be a drive-in franchise, a new model A&W was shopping to potential franchisees. During negotiations, Defendants allege that A&W provided Nickleson with information, including financial projections, which was laden with false data. As a result, Defendants argue that A&W fraudulently induced them into entering into the Franchise Agreement and opening a new franchise that A&W knew was destined to fail.

The time line for these events are material. A&W first offered Defendants the opportunity to purchase a new A&W drive-in franchise in an e-mail dated February 15, 2008. While considering the offer during in the summer of 2008, Nickleson explored potential sites for the new drive-in franchise. In October 2008, Nickleson decided not to pursue the purchase of the franchise due to financing concerns. A&W continued to pursue Nickleson, and in April 2009, he elected to move

2

forward with the Inver Grove Franchise.  Defendant Patricia Nickleson Enterprises, LLC, signed the Franchise Agreement with A&W to operate the Inver Grove Franchise.

The Inver Grove Franchise opened on August 5, 2009.  Defendants report that sales started strong but then trailed off by late 2009.  This was particularly troublesome because the franchise's drive-in model was more expensive to build and required a more substantial loan.  As a result of poor sales at Inver Grove, Defendants claim that they were forced to tap equity from the other three franchises to keep up with the ongoing financial obligations associated with the Inver Grove Franchise.  In the end, they were unable to pay royalties and advertising fees owed to Plaintiffs for any of the four establishments.

All four restaurants closed in January 2011, allegedly due to the failure of the Inver Grove Franchise.  Plaintiffs filed this Complaint for unpaid franchise fees and trademark infringement relating to all four restaurants.  Shortly thereafter, Defendants filed a complaint in Minnesota, and then moved to dismiss or transfer this case to Minnesota.  Following this Court's denial of their motion, Defendants filed the counterclaims against A&W that are the focus of this decision.

A&W now moves for summary judgment on all of the counterclaims.  Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   The party moving for summary judgment bears the burden of proving that the nonmoving party has presented no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied this burden, the nonmoving party bears the burden of proving the existence of a disputed factual element upon which the nonmoving party bears the burden of proof at trial. *Id.* The Court

will view the facts and draw all inferences in favor of the nonmoving party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.**

As an initial matter, the Court must determine what law governs this case.  Counts I and II advance various claims under the MFA, while Count III is a common law claim.  The Franchise Agreement provides a forum selection clause mandating that Kentucky law governs its validity and enforcement. It also provides that "nothing in the Franchise Disclosure Document or agreement(s) can abrogate or reduce any of the franchisee's rights as provided for in Minnesota Statutes, Chapter 80C . . ."[3]  This forum selection clause presents a complicated choice-of-law situation, particularly due to the MFA's anti-waiver provision.

The MFA's anti-waiver provision voids anything in a franchise agreement or contract that explicitly waives or has the effect of waiving compliance with the MFA.[4]  Some courts have refused to enforce forum selection clauses where the state's franchise statute contains an anti-waiver provision, since the applicable state law could theoretically waive compliance with a franchise

---

[3] The choice-of-law provision provides in full:
> This Agreement and the validity and performance hereof shall be governed by the laws of the State of Kentucky.  Minnesota Statutes, Section 80C.21 and Minnesota Rule 2860.4400(J) prohibit the franchisor from requiring litigation to be conducted outside Minnesota, requiring waiver of a jury trial, or requiring the franchisee to consent to liquidated damages, termination penalties or judgment notes. In addition, nothing in the Franchise Disclosure Document or agreement(s) can abrogate or reduce any of the franchisee's rights as provided for in Minnesota Statutes, Chapter 80C, or franchisee's rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction.

Franchise Agreement, ECF No.1-1.

[4] The anti-waiver provision provides in full:
> Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

MINN. STAT § 80C.21.

4

statute. However, as this Court has already noted in a prior decision, the MFA anti-waiver provision "has been interpreted to invalidate any binding out-of-state choice-of-law provision imposed on a Minnesota resident-franchisee and any other provision purporting to diminish rights granted to Minnesota franchisees pursuant to the Act." *Long John Silver's, Inc. v. Nickleson,* 2011 WL 5025347, at * 3 (W.D. Ky. Oct. 11, 2011). The MFA's anti-waiver provision simply operates to prohibit the franchising contract from abrogating or contradicting rights afforded to Minnesota franchisees under the MFA.

Since the Franchise Agreement's forum selection provision does not diminish Defendants' rights under the MFA, the MFA's anti-waiver provision does not result in the invalidation of Franchise Agreement's forum selection clause. Accordingly, the Court will enforce the MFA,[5] and recognize Defendants' counterclaims under the MFA for Counts I and II.[6] With respect to Count III, the common law fraud count, Kentucky law applies per the Franchise Agreement.[7]

### III.

Before addressing the merits of Defendants' counterclaims, the Court must address another threshold issue: standing. As A&W notes in its motions, only Defendant Patricia Nickleson, LLC, signed the Franchise Agreement. For this reason, A&W argues that the other Defendants, Nickleson, Patrick Nickleson Enterprises, LLC and PBJ Enterprises, LLC, lack standing to sue under the MFA

---

[5] Additionally, the Court will look to Minnesota court decisions for guidance in interpreting the MFA.

[6] State statutory schemes regulating franchises generally limit the scope of their operation to franchises or distributorships operating within the enacting state. "Thus, when a contract purports, through a choice of another state's law, to opt out of such a statute, the only thing the courts needs to answer is whether the contract falls within the reach of the statute. Since more often than not the statute expressly delineates its territorial reach, the answer to this question usually is easy." 5 CONFLICT OF LAWS § 18.7 (2010). The MFA applies to all persons, who at the time of acquiring a franchise, are residents of Minnesota, or in the case of a partnership or corporation, are organized or incorporated in Minnesota. *See* MINN. STAT. §§ 80C.01-.30. Since all of the Defendants that acquired a franchise are residents of Minnesota, the MFA is applicable.

[7] The Court notes that the law, with respect to fraud, in Minnesota and Kentucky is not remarkably different, and the decision regarding Defendants' common law counterclaim would likely be the same under the law of either state.

and for common law fraud.  The Court will address standing as it pertains to the common law and

MFA claims, and Nickleson in his individual capacity as guarantor and sole member of the Franchise

Defendants.

## A.

In Kentucky, generally only the parties to a contract may enforce or be bound by its

provisions.  *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012).  There is an exception

under the third-party beneficiary theory, which "comes about when the contracting parties intend by

their agreement to benefit some person or entity not otherwise a party." *Id.*  Here, the Franchise

Agreement is a separate franchising contract between only A&W and Patricia Nickleson, LLC.

These parties did not intend for the contract to explicitly or impliedly benefit Nickleson, Patrick

Nickleson Enterprises, LLC or PBJ Enterprises, LLC, to warrant standing under a third-party

beneficiary theory.

Accordingly, with respect to Defendants' common law fraud claim, only the signatory,

Defendant Patricia Nickleson, LCC, has standing.  *See Vanderbilt Mortg. & Fin. Inc. v. Dennis*, 2004

WL 690463, at *2 (Ky. Ct. App. Apr. 2, 2004)("In Kentucky, parties to a contract are protected from

fraudulent inducement . . .").[8]

## B.

Under the MFA, "a person who violates any provision of [the Act] shall be liable to *the*

*franchisee* or subfranchisor who may sue for damages caused thereby." MINN. STAT. § 80C.17, subd.

---

[8] Minnesota law is similar to Kentucky law with respect to standing for this type of claim. In Minnesota, only a party to a contract may move to enforce it.  *Veerkamp v. Farmers Co-op. Creamery of Foreston, Minn*, 573 N.W.2d 715, 717(Minn. Ct. App. 1998).  *See also Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 439 (Minn. Ct. App. 2004)(stating that generally, "nonparties to a contract acquire no rights or obligations under it"); *Bores v. Domino's Pizza LLC*, 489 F. Supp. 2d 940, 945 (D. Minn. 2007), *rev'd on other grounds*, (ruling that only the entities that signed the agreements could have been "induced" into signing them).

1 (emphasis added).  Defendant Patrick Nickleson Enterprises, LLC and PBJ Enterprises, LLC are franchisees under the MFA, *see* MINN. STAT. § 80C.1, subd. 5[9], but are not implicated in the present dispute.  Rather, the counterclaims involve only claims arising from the Inver Grove Franchise and its respective Franchise Agreement.

The MFA clearly states "*the* franchisee" not "any franchisee" may sue for damages caused by a franchisor. MINN. STAT. § 80C.17, subd. 1 (emphasis added).  A&W, the franchisor, granted Patricia Nickleson, LLC, the franchisee, the Inver Grove Franchise.  Accordingly, only Patricia Nickleson, LLC, may sue A&W for violations of the MFA arising from the Inver Grove Franchise.

### C.

Nickleson asserts that he has individual standing to pursue all counterclaims against A&W because he executed a personal guarantee for Defendant Patricia Nickleson, LLC's obligations.  However, Defendants' common law counterclaim relates to the Franchise Agreement, not the guarantee.  Nickleson is neither a party to the Franchise Agreement, nor a third party beneficiary to the Franchise Agreement.  As such, he lacks standing to maintain a common law fraudulent inducement claim.  *See Ping*, 376 S.W.3d, at 581; *see also Bores*, 489 F. Supp. 2d, at 945 (noting a fundamental difference between a franchise agreement and a guarantee such that guarantor could not maintain an action for breach of the franchise agreement).  As such, Nickleson lacks standing to pursue the common law fraud claim.

Regarding standing under the MFA, Nickleson does not gain standing as a *de facto* franchisee by virtue of being a guarantor or sole shareholder.  *See Hockey Enter. v. Total Hockey Worldwide, LLC*, 762 F. Supp. 2d 1138, 1151 (D. Minn. 2011)(holding that an individual's status as a

---

[9] Nickleson is not a franchisee or a subfranchisor as defined under the MFA, because he was never granted a franchise in his individual capacity.

shareholder and guarantor of a Minnesota franchisee does not garner standing to sue under the MFA where the individual has not asserted any damages or fraud claims that are separate and different from the franchisee's claim).

In sum, Defendants Nickleson, Patrick Nickleson, LLC, and PBJ Enterprises, LLC, lack standing to pursue the counterclaims, and as such, must be dismissed. The Court will refer to Patricia Nickleson, LCC as "Defendant" for the balance of the opinion.

## IV.

Counterclaimant Defendant asserts three claims against A&W: (1) violations of the MFA in connection with the sale of the Inver Grove Franchise; (2) declaratory judgment for rescission of all the franchising contracts; and (3) common law fraud by intentional misrepresentation and omission. The Court will address each claim individually.

### A.

The MFA governs how franchises are established and terminated in the state of Minnesota. "The MFA's provisions were designed to protect potential franchisees from unfair contracts and business practices." *Kieland v. Rocky Mountain Chocolate Factory, Inc.,* 2006 WL 2990336, at *6 (D. Minn. Oct. 18, 2006). In Count I, Defendant alleges that A&W violated several provisions of the MFA.[10] Defendant asserts two technical violations of the MFA, as well as a more substantial

---

[10] The Court notes there is a bit of confusion in the interplay between the provisions of the MFA and the Minnesota Administrative Rules ("MAR"). For instance, Defendant alleges several violations of the MAR. However, the MAR provisions cited only define "false, fraudulent, or deceptive practice" within the meaning of MINN. STAT. § 80C.13. However, those particular terms, "false, fraudulent, or deceptive practice," do not actually appear in § 80C.13. As the Minnesota District Court notes in *Randall v. Lady of Am. Franchise Corp.,*

> [it] has doubts about whether Rule 2860.4500 can be remedied through civil suits by franchisees. True, as a general matter, a franchisor may be held liable to a franchisee for violations of rules promulgated under the Minnesota Franchise Act. But Rule 2860.4500, by its terms, simply defines the phrase "a 'false, fraudulent, or deceptive practice' within the meaning of Minnesota Statutes . . . sections 80C.12 and 80C.13 . . . ." The phrase "false, fraudulent, or deceptive practice" actually occurs only in Minnesota Statutes § 80C.12, which governs the state's ability to shut down a franchisor.

532 F.Supp.2d 1071, 1081 (D. Minn. 2007). Defendant has not alleged a violation under MINN. STAT. § 80C.12. As

material misrepresentation claim.  The allegations can be grouped into three categories: (1) A&W offered to sell the Defendant an unregistered franchise; (2) A&W accepted consideration from Defendant without providing Defendant with A&W's current public offering statement; and (3) A&W made false and misleading statements concerning the Inver Grove Franchise and the performance of other operating A&W franchises.  The Court will address each violation in turn.

1.

First, Defendant claims A&W violated MFA's prohibition on offering to sell franchises before "an effective registration statement [is] on file." MINN. STAT. § 80C.02.[11]  It is undisputed that A&W offered Defendant the opportunity to purchase an A&W drive-in franchise by an e-mail dated February 15, 2008.  The State of Minnesota did not approve the 2008 A&W Drive-In FDD by Order of Registration until April 18, 2008.

A&W maintains that even if it otherwise violated the MFA's pre-registration provision, this particular claim is time-barred under the MFA.  The MFA provides that "[n]o action may be commenced [under the MFA] more than three years after the cause of action accrues." MINN. STAT. § 80C.17, subd. 5.  A&W argues that the limitations period for this claim expired on February 15, 2011, three years after the e-mail offer.  As Defendant did not assert its counterclaims until November 11, 2011[12], A&W argues that this claim must be dismissed.  Defendant counters that this claim did not accrue until the date it became a franchise, August 7, 2009.  Defendant reasons that

_____

such, the alleged violations of the MAR are not actionable, but the Court will take into consideration the definitional scheme.

[11] In Minnesota, franchisors like A&W are required to disclose certain information to prospective franchisees.  Prior to offering the sale of a franchise, franchisors must also file and register their current Financial Disclosure Document ("FDD") with the Minnesota Department of Commerce.  Franchisors that have previously registered their FDD must annually renew their registration.

[12] Defendants filed a complaint in Minnesota on March 28, 2011 that asserted the same claims as the counterclaims set forth in the case at bar.  This difference is immaterial as the pre-registration claim meets the same fate under either date.

one of the requirements to maintain a civil action under the MFA is that the party be a franchise, and here, Defendant did not become a franchise until the date the Franchise Agreement was executed.

Faced with substantially similar facts, a Minnesota court held that the three-year statute of limitations period began to run on the date the e-mail was sent. *Ellering v. Sellstate Realty Sys. Network, Inc.*, 801 F.Supp.2d 834, 840 (D. Minn. 2011). Defendant's MFA claim for failure to timely register the FDD is time-barred and as such, is dismissed.

2.

Defendant next claims that A&W violated the MFA by failing to present it with the 2009 A&W Drive-In FDD at least seven days prior to when Nickleson gave a $10,000 check to A&W for a site evaluation. MFA's public offering provision provides that

> [a]ny person offering for sale or selling any franchise which is subject to the registration requirements imposed by section 80C.02 shall, at the person's own expense, present to the prospective franchisee, at least seven days prior to the execution by the prospective franchisee of any franchise or other agreement, or at least seven days prior to the payment of any consideration by the franchisee, whichever occurs first, a copy of the current public offering statement together with a copy of all proposed agreements relating to the sale of the franchise.

MINN. STAT. § 80C.06, subd. 5. It is undisputed that A&W sent the 2009 FDD to Defendant in June of 2009, and Defendant, via Nickleson, first paid consideration on April 28, 2009.

A&W argues that Defendant received the 2008 FDD in July of 2008 and since that was more than seven days before the April 28, 2009 payment of consideration, A&W satisfied this disclosure requirement of the MFA. However, the statute clearly provides that the franchisor must provide a franchisee with a copy of the *current* public offering statement. When A&W accepted the $10,000 check, the 2008 FDD was not the current public offering statement and as such, it cannot save A&W from this violation.

10

Lastly, A&W argues that even if it violated the MFA, Defendant cannot establish damages caused by this untimely disclosure.  MFA's civil liability statute permits franchisees to sue for *damages caused* by violations of the MFA. MINN. STAT. § 80C.17, subd. 1.  Whether A&W's delay in disclosing the 2009 FDD caused Defendant damage is purely factual and the facts are in dispute. Since there are genuine issues of material fact as to causation and damages, summary judgment on this claim is improper at this juncture.

3.

Defendant next alleges that A&W violated the MFA by making untrue statements of material fact in connection with the sale of the Inver Grove Franchise.[13]   In Minnesota, franchisors are prohibited from making false or misleading representations in written and oral communications to a franchisee.  MINN. STAT. § 80C.13.  Defendant specifically alleges that A&W provided misleading and untrue information and omitted material facts regarding the estimated costs, revenues and profits

---

[13] In sum, Defendant alleges A&W violated the following two subdivisions of the MFA:
> § 80C.13 Prohibited Practices:
> Subdivision 1. Documents; untrue material facts and omitted material changes.  No person may make or cause to be made any untrue statement of a material fact in any application, notice, report, or other document filed with the commissioner under sections 80C.01 to 80C.22, or omit to state in any such application, notice, report or other document any material fact which is required to be stated therein, or fail to notify the commissioner of any material change as required by section 80C.07.
> Subdivision 2. Communications; untrue or omitted material facts.
> No person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

MINN. STAT. § 80C.13

of the Inver Grove Franchise.[14]   In addition, Defendant asserts that A&W misrepresented the financial state of other operating A&W franchises.

In its defense, A&W relies heavily on the Franchise Agreement's disclaimers and integration clause included in the Franchise Agreement and FDDs.[15]   Essentially, A&W asserts that it disclaimed any representations regarding the costs, sale or profits of the Inver Grove Franchise and made clear that A&W representatives were not authorized to make such claims.   Additionally, the Franchise Agreement's integration provision nullifies any "agreements, understandings, representations, inducements and statements" between the parties prior to entering into the Franchise Agreement.

---

[14] Generally, alleged misrepresentations as to future events are not actionable.   However, Defendant maintains that misrepresented future projections are actionable when they do not accurately reflect surrounding past and present circumstances.   Projections can support "a claim for misrepresentation under the Minnesota Franchise Act" because "projections can, in some circumstances, [also] support a common-law fraud claim." *Randall*, 532 F. Supp. 2d at 1090. Defendant claims that A&W supplied financial projections that were implausible because they were derived from objectively incorrect financial data from other A&W franchises.   Viewing all the facts in the light most favorable to the nonmovant, Defendant has presented sufficient evidence to create a genuine issue of whether A&W's future projections did not accurately reflect the current financial state of other A&W franchises.   As such, Defendants have alleged a viable future events claim under the MFA.

[15] The Franchise Agreement contains the following integration and disclaimer provision:

> 19.3 <u>Entire Agreement</u>. This Agreement and the documents referred to herein constitute the entire agreement between the parties and supersedes and cancels any and all prior and contemporaneous agreements, understandings, representations, inducements, and statements, oral or written, of the parties in connection with the subject matter hereof.   Notwithstanding the foregoing, however, this Agreement shall preserve, and not supersede, subordinate, enlarge or extend, any presently existing rights or obligations of NAWFA (hereinafter defined), its members of the Company which are granted in or imposed by prior agreements between NAWFA and the Company.   Nothing in this or any related agreement, however, is intended to disclaim the representations we made in the Franchise Disclosure Document that we furnished to you.
>
> THE FRANCHISEE EXPRESSLY ACKNOWLEDGES THAT IT HAS ENTERED INTO THIS FRANCHISE AGREEMENT AS A RESULT OF ITS OWN INDEPENDENT INVESTIGATION AND AFTER CONSULTATION WITH ITS OWN ATTORNEY, AND NOT AS A RESULT OF ANY REPRESENTATIONS OF THE COMPANY, ITS AGENTS, OFFICERS OR EMPLOYEES, EXCEPT AS EXPRESSLY REFERRED TO HEREIN.

Franchise Agreement, ECF No. 1-1.
The 2008 and 2009 FDD contained the following disclaimers:

> We do not make any representations about a franchisee's future financial performance or the past financial performance of company-owned or franchised outlets.   We also do not authorize our employees or representatives to make any such representations either orally or in writing. . . .   If you receive any other financial performance information or projections of your future income, you should report it to the franchisor's management.

2009 FDD, ECF No. 36-8.

12

Nevertheless, Defendant maintains its MFA misrepresentation claim on the argument that the disclaimers are not enforceable.

Minnesota's treatment of disclaimers in franchising documents is inconsistent. *Compare Carlock v. Pillsbury Co.* 719 F. Supp. 791, 828 (D. Minn. 1989)(dismissing claims based on oral representations that were expressly contradicted by the terms of the applicable offering statement), *Moua v. Jani-King of Minnesota, Inc.*, 810 F. Supp. 2d 882, 892 (D. Minn. 2011)(holding the same), *and Ellering*, 801 F. Supp. 2d at 845 (holding franchisee could not state an MFA claim regarding allegedly false and misleading future revenue projections because it could not establish reasonable reliance in the face of a carefully worded disclaimer), *with Randall*, 532 F. Supp. 2d at 1089 (holding that disclaimers contained in disclosure documents and the franchise agreement were void under § 80C.21 because they had the effect of waiving compliance with the MFA).

Minnesota courts' treatment of disclaimers at times appears to focus on how general or specific the disclaimer is and whether the disclaimer does in fact repudiate the alleged conduct. Other times, courts will focus on the interrelationship between a disclaimer and MFA's anti-waiver provision. Both treatments often lead to incongruous results, and consequently are the primarily arguments that the parties put forth on this motion for summary judgment.

a.

A&W contends that as part of its MFA misrepresentation claim, Defendant must establish reasonable reliance on the purported misrepresentation. A&W argues that any reliance by the Defendant was unreasonable as a matter of law due to the multiple disclaimers in the two FDDs and the Franchise Agreement, and therefore A&W is entitled to summary judgment on this claim.

13

In making out a MFA claim based on statements of untrue material fact, some Minnesota courts have interpreted the MFA to require a franchisee to establish reasonable reliance on the purported misrepresentations. *Ellering*, 801 F. Supp. 2d at 845. Though the MFA does not expressly require reasonable reliance to maintain suit, *see Randall*, 532 F. Supp. 2d at 1087, some courts have held that a franchisee's misrepresentation claim fails as a matter of law because the franchisee is unable to establish reasonable reliance due to the presence of specific disclaimers. *See Kieland*, 2006 WL 2990336. *But see Randall*, 532 F. Supp. 2d at 1086 ("General disclaimers and integration clauses are given no effect in misrepresentation cases under Minnesota law. . . . [E]ven fairly *specific* disclaimers are typically held to create jury questions about reliance, rather than negate reliance as a matter of law.").

A&W predominately relies on the *Ellering* case wherein a Minnesota court granted summary judgment against the franchisee on its MFA misrepresentation claim. The court determined that the franchisee could not, as a matter of law, justifiably rely on the purported misrepresentations, because the franchisee "expressly acknowledged in the [franchise agreement] that [it] 'ha[d] not relied upon any guarantee, warranty, projection, forecast or earnings claim, whether express, implied, purported or alleged, in entering into' that agreement." *Ellering*, 801 F. Supp. 2d at 845. A&W notes that the Franchise Agreement's disclaimer contains similar language, providing that the "franchisee expressly acknowledged that it entered into this franchise agreement as a result of its own independent investigation and after consultation with its own attorney, and not as a result of any representations of the company, its agents, officers or employees." Franchise Agreement, ECF No. 1-1. Given this language, A&W argues Defendant could not have reasonably relied on any purported statements as to the future profitability of the Inver Grove Franchise. As to allegations that A&W made materially

14

untrue statements concerning the profitability of other existing A&W franchises, A&W cites to the 2009 FDD disclaimer that states "[w]e do not make any representations about a franchisee's future financial performance or *past financial performance* of company-owned or franchised outlets." 2009 FDD, ECF No. 36-8 (emphasis added).

This Court agrees that a franchisee must establish reasonable reliance to merit an award of damages under the MFA. The MFA provision at issue appears to impose absolute legal liability, akin to strict liability, on franchisors that make an "untrue statement of a material fact." MINN. STAT. § 80C.13. However, the provision that grants franchisees a private right of action under the MFA provides that "[a] person who violates any provision of [the MFA] shall be liable to the franchisee or subfranchisor who may sue for *damages caused thereby*, for rescission, or other relief as the court may deem appropriate." MINN. STAT. § 80C.17 (emphasis added). *See Randall*, 532 F. Supp. 2d at 1086 ("Of course, some kind of reliance–reasonable or unreasonable–is required because a franchisee can only recover damages that are caused by a franchisor's violation of the Minnesota Franchise Act. Without reliance, there can be no causation."). Thus, a franchisee that asserts that a franchisor violated the MFA because it made materially untrue statements must establish reasonable reliance to be entitled to damages.[16]

---

[16] The Court acknowledges that Defendant seeks damages, or in the alternative rescission, in connection with its MFA claims. A recent Minnesota court found, "[t]o avoid unjust outcomes based on technical violations, absent actual fraud, franchisees do not have an absolute right to rescind a franchise agreement which violates the MFA." *Bonus of Am., Inc. v. Angel Falls Servs., LLC*, 2010 WL 2734218, at *4 (D. Minn. 2010). Accordingly, before a court can grant the remedy of rescission, the franchisee must demonstrate it was defrauded, which requires a showing of reasonable reliance under Kentucky and Minnesota common law. The Court declines to rule whether reasonable reliance must be established when a franchisee sues for rescission and restitution under the MFA civil liability provision, MINN. STAT. § 80C.17. At present, this dispute is in its early stages and Defendant has not affirmatively established that A&W violated the MFA. As such, it is premature to consider what relief is appropriate.

This Court, however, diverges from *Ellering* in finding that reliance cannot be decided as a matter of law given that the MFA's regulatory scheme is intended to protect franchisees. As discussed below, the MFA contains an anti-waiver provision that nullifies any provision that purports to waive compliance with the MFA. A disclaimer should suppress a franchisee's reliance on the purported misstatements. However, a franchisee aware of the MFA's anti-waiver provision and the inconsistent treatment of disclaimers by Minnesota courts, may reasonably believe that a disclaimer would not be upheld in court. Given there could be multiple, plausible degrees of reliance that are entirely subjective to the franchisee, the Court rules Defendant's reliance was not unreasonable as a matter of law.

In sum, the Court agrees with A&W that Defendant must have reasonably relied on the alleged misrepresentations to succeed on a fraud claim for damages under the MFA. However, the Court disagrees with A&W that Defendant unreasonably relied on the statements due to the disclaimers, and instead finds that the parties have presented a genuine issue as to reliance.

b.

Defendant next argues that A&W is not entitled to summary judgment on the MFA misrepresentation claim because the disclaimers found in the FDDs and Franchise Agreement are void under MFA anti-waiver provision, § 80C.21. The language of the disclaimers repudiate any financial representations, providing in part, "We do not make any representations about a franchise's future financial performance . . ." 2009 FDD, ECF No. 36-8. However, Defendant contends that MFA's anti-waiver provision renders void any "condition, stipulation or provision" in a franchise agreement that has the effect of waiving a franchise's obligations under the statute. *See* MINN. STAT. § 80C.21. As such, Defendant argues that the disclaimers contained in the FDDs and Franchise

16

Agreement are void because the disclaimers, if enforced, would have the effect of waiving compliance with the MFA by nullifying MFA's prohibition against material false statements. A recent Minnesota court opinion addressed this very issue:

> Section 80C.21 voids anything in a contract that explicitly waives compliance with a provision of the Act or that has the *effect* of waiving compliance with a provision of the Act. One such provision that cannot be waived is § 80C.13's prohibition of material false statements.
>
> Section 80C.13's scope is clear. The provision would, for example, prohibit a dishonest franchisor from telling a franchisee that all existing franchise locations had gross annual sales of at least $1 million, when in fact no location had gross sales over $250,000. And it is equally clear that, under § 80C.21, the dishonest franchisor could not avoid § 80C.13's prohibition by including the following in the franchise agreement: "I may have misrepresented the revenues of existing franchises. You waive your right to hold me liable for those misrepresentations under § 80C.13 of the Minnesota Franchise Act." Such a provision would plainly be invalid under § 80C.21.
>
> Under § 80C.21, any provision that has the same "effect" as this waiver would also be invalid. Suppose, for example, that the dishonest franchisor included in the franchise agreement not the express waiver provision quoted in the preceding paragraph, but rather the following: "I did not make any representations about the revenues of existing franchises. If you disagree, I hereby disclaim any representations that you believe I made. You cannot rely on them." Why should such a disclaimer, for purposes of Minnesota's franchise law, be treated any differently from the express waiver? The disclaimer cannot change the historical facts; if the dishonest franchisor made misrepresentations, then he made misrepresentations, no matter what the franchise agreement says. Thus, the disclaimer can only be an attempt to change the *legal effect* of those misrepresentations. That is precisely what § 80C.21's anti-waiver language forbids.

*Randall*, 532 F. Supp. 2d at 1088-89. This Court finds that given the spirit of the MFA to protect franchisees, the Minnesota legislature probably intended for the anti-waiver provision to prevent franchisors from scrupulously hiding behind disclaimers after making materially untrue statements in contravention of the MFA. *See Clapp v. Peterson*, 327 N.W.2d 585, 586 (Minn. 1982)(noting the MFA "was adopted in 1973 as remedial legislation designed to protect potential franchisees within

Minnesota from unfair contracts and other prevalent and previously unregulated abuses in a growing national franchise industry"). However, the Court is hesitant to find the disclaimers altogether void. The disclaimers will no doubt influence a jury's determination of whether Defendant's reliance on the alleged untrue statements was reasonable. The Court merely finds that A&W cannot use a disclaimer to defeat Defendant's misrepresentation claim under the MFA.

Because genuine issues remain as to whether A&W has in fact made materially untrue statements in violation of the MFA and whether Defendant reasonably relied on those statements, A&W is not entitled to summary judgment on its disclaimer theory.

### B.

In Count III of the counterclaim, Defendant asserts common law fraud (intentional misrepresentation and fraud by omission) against A&W for providing willfully false and misleading statements regarding the future earning potential of the Inver Grove Franchise and the existing financial performance of other A&W franchises. Defendant alleges that A&W induced it to enter into the Franchise Agreement based on these intentional misrepresentations and omissions.

### 1.

Under Kentucky law, to successfully state a claim for intentional misrepresentation, Defendant must establish by clear and convincing evidence that A&W: "a) made a material representation; b) which was false; c) which was known to be false or made recklessly; d) which was made with inducement to be acted upon; e) which [Defendant] acted in reliance upon; and f) which caused [Defendant] injury." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003). With respect to the reliance element, Defendant "must prove that [its] reliance on the misrepresentation was reasonable, and in making this determination, the Court should

18

consider [Defendant's] knowledge and experience." *Basset v. NCAA*, 428 F. Supp. 2d 675, 682 (E.D. Ky. 2006).  Kentucky law draws a distinction between misrepresentations as to future events and current or past events.  Defendant alleges both, so the Court will address each set of allegations separately.

Defendant contends that A&W intentionally misrepresented the future sales and profits expected from the Inver Grove Franchise.  It is well-settled in Kentucky that the misrepresentations must relate to past or present material facts to maintain a common law fraud claim.  *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009); *see Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007) (stating that "an expression of an opinion as to future profits is not actionable as fraud, at least where the subject of the opinion is not susceptible of definite knowledge").   However, there are exceptions to this rule "where the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham." *Flegles, Inc.*, 289 S.W.3d at 549.[17]  Thus, "a statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 800 (W.D. Ky. 2005)(internal citations omitted).  Nevertheless, "the law imposes upon recipients of

---

[17] The Kentucky Supreme Court illustrated the exceptions with the following examples:

In *Kentucky Electric Development Company's Receiver v. Head*, 252 Ky. 656, 68 S.W.2d 1 (1934), for example, a Depression Era case in which securities agents bilked a seventy-year-old woman by grossly misrepresenting the current condition of the company whose stock they were pushing and by making outlandish promises about its future performance, the former Court of Appeals held that a declarant who "falsely represents his opinion of a future happening" could be subject to liability. *Id.* at 3. In that case, a misrepresentation about prompt future payment of a dividend was actionable because the company was not then financially able to pay dividends, there was no present intention to pay the dividend, and the representation was made to deceive the buyer. Similarly, in *Edward Brockhaus Co. v. Gilson,* 263 Ky. 509, 92 S.W.2d 830 (1936), the Court recognized that misrepresentations regarding the future listing of a company's stock on a stock exchange and the company's commencement of operations would be actionable if the speaker knew there was no present intent to do so.

*Flegles, Inc.*, 289 S.W. 3d at 549.

business representations a duty to exercise common sense." *Flegles, Inc.*, 289 S.W. 3d at 549. "Absent [a] misrepresentation of objective data, 'forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent or overly optimistic.'" *Id.* (quoting *In re Salomon Analyst AT&T Litigation*, 350 F. Supp. 2d 455, 467 (S.D.N.Y. 2004)).

Several of Defendant's fraud allegations relate to future projections, which are not actionable under the general rule. However, Defendant maintains that A&W misrepresented the past or existing facts upon which these future projections were derived.[18] Additionally, Defendant contends that the representations made regarding the financial strength of A&W and its franchises were not accurate depictions of the current state of affairs. Defendant claims A&W intentionally made these misrepresentations to induce Defendant into opening another franchise. For instance, Defendant asserts that A&W supplied fraudulent financial projections that were based on untrue financial information relating to two other A&W franchises; specifically, A&W represented that two new drive-in A&W franchises established in Wisconsin and Florida were generating positive sales figures, when in fact they were grossly underperforming. These allegations fit into the narrow exception enunciated above where a statement as to future events can be the basis of a fraud claim.

Similar to its defense of the MFA misrepresentation claim, A&W asserts that Defendant's intentional misrepresentation claim fails due to the disclaimers found in the FDDs and Franchise Agreement. In particular, A&W argues that Defendant cannot establish reasonable reliance on the purported misrepresentations since the terms of the disclaimer directly contradicted them. In Kentucky, "a party may not rely on oral representations that conflict with written disclaimers to the

---

[18] With respect to allegations that A&W misrepresented future events and those predictions were not based on misrepresentations as to past or existing facts, those allegations are dismissed. *See Radioshack Corp.*, 222 S.W. 3d at 262 (stating that alleged misrepresentations that relate exclusively to a future promise or an opinion of a future event, and are not susceptible of exact knowledge, are not actionable).

contrary which the complaining party earlier specifically acknowledged in writing." *Rivermont Inn,* 113 S.W.3d at 640-41.[19]  However, in this case, Defendant alleges very specific misrepresentations, which A&W seeks to disavow through a blanket disclaimer.  *See supra* note 15.  This is not the type of direct contradiction imagined in *Rivermont Inn.*

To illustrate, in *Turner v. Leggett*, plaintiff alleged defendant misrepresented the length of time defendant would employ plaintiff.  2010 WL 1049849, at *7 (W.D. Ky. Mar. 19, 2010). Specifically, plaintiff asserted that during the employment interview with defendant's representative, he was told that he would have a "long career" with defendant.  *Id*. at *6.  Defendant argued that plaintiff later signed employment materials, which expressly acknowledged the at-will nature of his employment, and as such, the written disclaimer directly contradicted the oral misrepresentation. *Id*. at *7.  The court agreed, finding the oral promises to be in direct contradiction of the employment contract and dismissing the claim for fraud by misrepresentation.   *Id*.   In this case, A&W's disclaimer is so general it envelops almost any misrepresentation A&W could have made.  To uphold such a vast disclaimer would incentivize franchisors to write broadly-worded disclaimers that would negate specific, unequivocal misrepresentations made by the franchisor and its representatives.

"Disclaimers, to be sure . . . do not insulate a party from its fraud, but they do put the opposing party on notice that projections ought not to be uncritically relied upon." *Flegles, Inc.*, 289 S.W.3d at 549.  In *Flegles*, the Kentucky Supreme Court noted the difference between projections

---

[19] The Court notes that the facts in *Rivermont Inn* are materially different than this case.  In that case, plaintiff signed a contract wherein it acknowledged that its franchise application may be denied for "any reason." *Rivermont Inn*, 113 S.W. 3d at 641.  Only after this acknowledgment did plaintiff ask defendant whether it would be granted a franchise.  Plaintiff arguably had to know the answer would be a prediction or best guess, as it just acknowledged that an application could be denied for any reason.  Thus, the alleged misrepresentation came *after* the party acquiesced to the disclaimer. However, Kentucky courts have extrapolated this rule to situations analogous to the one at bar, where the alleged misrepresentation is later disclaimed in a contract.  *See Turner v. Leggett*, 2010 WL 1049848, at *7 (W.D. Ky. Mar. 19, 2010).

based on opinion and projections based on unequivocally false data, suggesting that a disclaimer cannot shield a party from fraud where the party "lied about actual facts." *Id*. at 549.  This is precisely what Defendant alleges.  To the extent that A&W made future projections based on objectively false data, Defendant's counterclaim is actionable because the misstatements go beyond mere puffery and opinions into the territory of an outright lie.  A broadly-worded, strategically placed disclaimer should not negate reliance as a matter of law where A&W allegedly shared objectively false data to induce Defendant to enter into the Franchise Agreement.  Accordingly, the Court declines to grant summary judgment on the misrepresentation claim as to future projections where the projections are allegedly based on objectively false data.

In addition to the fraudulent future projections allegations, Defendant also asserts that A&W misrepresented the existing financial state of other operating A&W franchises.[20]  For similar reasons discussed above, Defendant has presented sufficient evidence to create a genuine issue whether A&W fraudulently misrepresented the past or current financial state of other A&W operations. Accordingly, the Court will deny summary judgment on Defendant's common law intentional misrepresentation claim.

## 2.

Defendant also claims that A&W committed fraud by failing to disclose material facts as to the costs and risks associated with opening up the Inver Grove Franchise.[21]  Fraud by omission has

---

[20] The Court notes the assertions that A&W provided false data as to the current financial state of other A&W franchises overlap with Defendant's allegation that A&W supplied fraudulent financial projections derived from that data.  Not only was the allegedly false financial data incorporated into financial projections for the Inver Grove Franchise, Defendant maintains that A&W directly supplied it with incorrect financials as to the other existing A&W operations.  For instance, Defendant alleges that A&W represented that the new drive-in franchises established in Wisconsin and Florida were experiencing strong sales figures when in fact they were grossly underperforming.

[21] Specifically, Defendant alleges the following material omissions: 1) A&W had a duty to advise Defendant that a drive-in location "north of the frost line" made no economic sense; 2) A&W had a duty to disclose that it was in the process of refinancing two-thirds of its own corporate units; and 3) A&W failed to make full disclosure of material facts relating

substantially different elements than fraud by misrepresentation. *Rivermont Inn*, 113 S.W.3d at 641. To prevail on a fraud by omission claim, Defendant must prove "a) that [A&W] had a duty to disclose that fact; b) that [A&W] failed to disclose that fact; c) that [A&W's] failure to disclose the material fact induced the [Defendant] to act; and (d) that the [Defendant] suffered actual damages." *Id*. A&W argues that Defendant cannot establish a fraud by omission claim, because A&W did not have a duty to reveal any of the alleged material facts Defendant advances.

"A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a [plaintiff] has partially disclosed material facts to the [counterclaimant defendant] but created the impression of full disclosure." *Id*. Indeed, "[m]any courts hold that a franchisor-franchisee relationship does not give rise to this duty because it is not fiduciary in nature." *Papa John's Int'l, Inc. v. Dynamic Pizza, Inc.,* 317 F. Supp. 2d 740, 749 (W.D. Ky. 2004). Defendant has failed to identify any duty that would require A&W to disclose the omitted facts of which it complains. *See supra* note 21. First, the parties were not in a confidential or fiduciary relationship. Second, Defendant signed the Franchise Agreement, which contained a provision acknowledging that Defendant had the opportunity to perform its own due diligence. If Defendant had in fact performed due diligence, as it contractually affirmed it did, it likely would have uncovered the allegedly omitted facts. Therefore, Defendant's fraudulent omission claim fails as a matter of law.

C.

In Count II, Defendant demands a judgment rescinding the Franchise Agreement, and all other franchise and collateral agreements between Plaintiffs and Defendants. As an initial matter,

---

to A&W's new drive-in franchise offering.

the Court notes that the counterclaims, and corresponding allegations of misrepresentation, relate solely to the Inver Grove Franchise and its Franchise Agreement. Therefore, rescission is not appropriate for any of the other franchise and collateral contracts.

With respect to the Franchise Agreement, A&W argues that rescission is unavailable given Defendant's delay in asserting its claim for rescission. A&W notes that Defendant admitted to dismal profits at the end of 2009, but did not file its claim for fraud and rescission until March 2011. It further argues that such untimeliness acts as a waiver; once Defendant discovered that the costs and revenues were not as purportedly promised, the continued performance of the Franchise Agreement waived the Defendant's right to rescind the contract. Moreover, A&W contends that rescission is inappropriate, as Defendant has not returned any consideration it has received. As such, A&W maintains it is impossible to restore the parties to the *status quo ante*, the ultimate goal of rescission.

If the Court were to find that A&W materially violated the MFA, Defendant is likely entitled to all of the remedies authorized under MINN. STAT. § 80C.17, including but not limited to damages, rescission, or any other relief a court deems appropriate. As stated above, Defendant has alleged various technical violations of the MFA as well as a substantial misrepresentation claim. Because some of these claims may prove meritorious, the Court is hesitant to grant A&W summary judgment on the recession claim as to the Franchise Agreement.[22]

**V.**

---

[22] Though A&W argues that recession is unavailable as a matter of law due to the delay and inability to return the parties to the *status quo ante*, Defendant has cited numerous cases combating these arguments. Ultimately, rescission is a remedy, and the Court must first determine which party materially breached the Franchise Agreement before addressing which remedies are appropriate.

This opinion is not meant in any way to conclude that Defendant has proven its remaining counterclaims. This dispute is in its early stages and the Court anticipates the parties will unearth more information to develop the claims and counterclaims. At this point, Defendant has merely provided enough evidence to withstand summary judgment on a few of its counterclaims. What remains of this action are Plaintiffs' claims against all Defendants delineated in the Complaint and the surviving counterclaims set forth in the accompanying order.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff, A&W's Motion for Summary Judgment on Defendants' counterclaims is SUSTAINED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants Nickleson (in his individual capacity), Patrick Nickleson, LLC, and PBJ Enterprises, LLC lack standing to pursue the counterclaims and as such, their counterclaims ARE DISMISSED. Only Defendant Patricia Nickleson, LLC, may maintain the surviving Counterclaims.

IT IS FURTHER ORDERED that with respect to Count I, the MFA claim for failure to timely register the FDD is DISMISSED. In Count I Patricia Nickleson, LLC's claim remains for violations of (1) MINN. STAT. § 80C.06, subd. 5 and (2) MINN. STAT. § 80C.13, subd. 1 and 2.

IT IS FURTHER ORDERED that with respect to Count II, the rescission claim as to all other franchise and collateral agreements between Plaintiffs and Defendants, aside from the Inver Grove Franchise Agreement, is DISMISSED. The remaining claim in Count II is Patricia Nickleson, LLC's rescission claim of the Inver Grove Franchise Agreement.

IT IS FURTHER ORDERED that with respect to Count III, the fraud by omission claim is DISMISSED. In Count III, therefore, only Patricia Nickleson, LLC's common law intentional

misrepresentation claim remains.

cc:     Counsel of Record